IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19 CV 404 WCM

| | |
|---|---|
| PENNY CRAIG, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | )     MEMORANDUM OPINION |
| v. | )     AND |
| | )     ORDER |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

This matter is before the Court on the parties' cross motions for summary judgment. Docs. 13 & 16.[1]

## I. Procedural Background

On January 8, 2016, Plaintiff Penny Craig ("Plaintiff") filed concurrent applications for disability insurance benefits and supplemental security income. Transcript of Administrative Record ("AR") pp. 188-203. Following denial of Plaintiff's claims on initial review and reconsideration, a video hearing was conducted, where Plaintiff appeared and testified. AR pp. 31-50. Plaintiff was represented by counsel at the hearing.

---

[1] The parties have consented to the disposition of this matter by a United States Magistrate Judge. Docs. 11 & 12.

On August 10, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 14-26. The Appeals Council denied Plaintiff's request for review of that decision and on August 19, 2019, Plaintiff timely filed the instant action. AR pp. 1-5; Doc. 1. Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P (the "Listings"); (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520,

416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Plaintiff has the severe impairment of an intellectual disorder, but that this impairment did not meet or medically equal Listing 12.05. AR p. 17. The ALJ further found that Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work). She can use judgment to make simple work related decisions. She can frequently respond appropriately to supervisors and occasionally respond appropriately to coworkers and the public. She is limited to simple work related decisions in a routine work setting. [Plaintiff's] time off task can behavior can (sic) be accommodated by normal breaks.

AR p. 20.

Applying this RFC, the ALJ found that Plaintiff had no relevant work history, but that Plaintiff could perform other work such that she was not disabled from January 6, 2016 (the alleged disability onset date) through August 10, 2018

3

(the date of the ALJ's Decision). AR pp. 24-25.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

Plaintiff makes three allegations of error: (1) the ALJ's listing analysis is not supported by substantial evidence, (2) the RFC does not account adequately for Plaintiff's moderate limitations in three non-exertional functional areas and is not supported by substantial evidence, and (3) the ALJ failed to resolve apparent conflicts between the representative occupations identified by the vocational expert ("VE") and job requirements as set forth in the Dictionary of Occupational Titles ("DOT").

### A. Listing Issues

#### 1. Overview of the Listings

The Listings detail impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) & 416.925(a). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013). The burden of presenting evidence that an impairment meets or is medically equivalent to a listed impairment lies with the claimant. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986).

When an ALJ's analysis is reviewed, even "[a] cursory explanation" at step three may be "satisfactory so long as the decision as a whole demonstrates

that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Odoms v. Colvin, 194 F.Supp.3d 415, 421 (W.D.N.C. July 11, 2016) (citing Meador v. Colvin, 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 Fed. App'x. 326, 328 (4th Cir.2011))).

### 2. Listing 12.05

To fulfill the requirements of Listing 12.05(B),[2] a claimant must establish that, due to a disorder beginning prior to the age of 22, she has (1) "[s]ignificantly subaverage general intellectual functioning" evidenced by a specified IQ score; and (2) "[s]ignificant deficits in adaptive functioning." See Listing 12.05(B)(1) & (2). To establish the required "deficits in adaptive functioning," a claimant must manifest an extreme limitation in one, or a marked limitation in two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Listing 12.05(B)(2)(a)-(d).[3]

---

[2] It does not appear that Plaintiff challenges the ALJ's findings with respect to Listing 12.05(A).

[3] Areas of mental functioning are rated on a five-point scale. See Listing 12.00(F)(2). When a claimant's ability to function in an area independently, appropriately, effectively, and on a sustained basis is "fair," the claimant is considered to have a moderate limitation. Listing 12.00(F)(2)(c). A claimant is considered to have a "marked limitation" in an area of mental functioning when his or her ability to

6

Here, the ALJ recognized that Plaintiff earned a full-scale IQ score meeting the specifications of Listing 12.05(B). However, the ALJ found that Plaintiff had moderate, rather than marked or extreme, limitations in all four areas of mental functioning. AR pp. 18-20. Plaintiff contends that substantial evidence supports a finding that she has "an extreme limitation in concentration, persistence, or pace, and marked limitations in understanding, remembering, or applying information and adapting or managing oneself." Pl.'s Mem. (Doc. 14), p. 10.[4]

### a. Understanding, Remembering, and Applying Information

Understanding, remembering, or applying information "refers to the abilities to learn, recall, and use information to perform work activities." Listing 12.00(E)(1).

The ALJ relied on a January 2016 consultative examination report in which Rebecca Taylor and Dr. Frieda Brown stated that Plaintiff's thoughts were organized, she was able to follow simple instructions, had previously obtained a driver's license, was able to assist her mother with household chores, and demonstrated the ability to "understand, retain, and follow

---

function independently, appropriately, and effectively on a sustained basis "is seriously limited." Listing 12.00(F)(2)(d). An "extreme limitation" is found when a claimant is unable to function in the specific functional area. Listing 12.00(F)(2)(e).

[4] Plaintiff does not challenge the ALJ's determination that she has a moderate limitation in interacting with others. Doc. 14, p. 7.

7

instructions" during her testing. AR pp. 18-19 (discussing AR pp. 312-315).

### b. Concentrating, Persisting, or Maintaining Pace

Concentrating, persisting, or maintaining pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." Listing 12.00(E)(3).

While the ALJ acknowledged that Plaintiff reported a short attention span, inability to finish tasks and follow written or oral instructions well, and difficulty handling stress and changes in routine, the ALJ found other self-reported evidence to be inconsistent with these statements. AR p. 19. Specifically, the ALJ explained that Plaintiff self-reported her ability to care for herself, her dog, and assist with household chores, and testified that she helps care for her nephews. See AR pp. 244-251; pp. 41-42.

Additionally, the ALJ explained that Plaintiff reported to Dr. Brown that she had, at one point, possessed a driver's license and completed high school. See AR pp. 312-313. Finally, the ALJ relied upon the opinions of the state agency psychologists, Dr. Nancy Herrera and Dr. Jill Rowan, who both found Plaintiff had no more than moderate limitations in this functional area. AR p. 19 (discussing AR pp. 65-67 (Dr. Herrera) & pp. 84-87 (Dr. Rowan)).

### c. Adapting or Managing Oneself

Adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." Listing

8

12.00(E)(4).

As explained by the ALJ, Plaintiff reported that she is capable of caring for herself, her dog, nephews, and assists her mother with household chores. AR p. 20; see also pp. 244-250. At the hearing, Plaintiff testified that she has arguments with her mother "not a lot, just once in a while," and that she did not experience any anger issues when she was working in a church daycare. AR pp. 44-45.

The undersigned finds that the ALJ's conclusion that Plaintiff does not meet the criteria of Listing 12.05(B) is appropriately supported.

### B. RFC

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson, 434 F.3d at 653.

In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is required, however, to build "an accurate and logical bridge from the

9

evidence to his conclusion" that Plaintiff's RFC sufficiently accounts for her limitations. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence."); Darby v. Berryhill, No. 1:16cv366-RJC, 2018 WL 310136, at * (W.D.N.C. Jan. 5, 2018) ("if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion.").

Plaintiff argues that the ALJ did not properly account for her mental limitations in the RFC and that the RFC itself includes limitations that the ALJ failed to define adequately. See Doc. 14, p. 13.

With respect to Plaintiff's mental limitations and the resulting functional limitations set out in her RFC, the ALJ afforded "great weight" to the opinion and objective findings of Dr. Brown, as well as to the opinions of the state agency consultants. See AR pp. 23-24. The ALJ explained that Dr. Brown reported Plaintiff was able to "understand, retain, and follow instructions" and was able to sustain "attention to perform simple, repetitive tasks during testing." AR p. 23 (discussing AR pp. 312-315).

The ALJ further explained that the state agency consultants' opinions supported the limitations set out in Plaintiff's RFC. AR p. 24. Both agency

10

consultants reported that Plaintiff had the capacity to: (1) understand, retain and follow simple instructions; (2) maintain adequate pace and concentration for simple tasks; (3) engage in routine interactions with coworkers and supervisors; and (4) deal with routine changes in the workplace. See AR pp. 59-69 & 80-90.

Plaintiff's RFC reflects these functional limitations. The ALJ restricted Plaintiff to "simple, routine, and repetitive tasks not at a production rate pace," and provided the reference, both in her decision and at the hearing, of "assembly line work" to explain the meaning of "production rate pace" work activity. AR pp. 20 & 48. The ALJ further limited Plaintiff to "simple work related decisions in a routine work setting;" the ALJ stated at the hearing that she "use[d] simple, work related decisions because [she] want[ed] to provide some limitation there regarding judgment and workplace stress." AR pp. 20 & 48. Finally, the ALJ limited Plaintiff to frequent interaction with supervisors, occasional interaction with coworkers and the public, and specified that her "time off task" could be accommodated with "normal breaks." AR p. 20. At the hearing, the ALJ confirmed with the Vocational Expert ("VE") that "normal breaks" consist of "a break every two hours." AR p. 48.

Unexplained pace-related restrictions in a plaintiff's RFC do not provide sufficient information to enable a court to assess an ALJ's conclusion. See Perry v. Berryhill, 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's

failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions,' Mascio, 780 F.3d at 636–37. Accordingly, we vacate and remand.") (alterations in original); Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019), as amended (Feb. 22, 2019) ("[W]hile the ALJ stated that Thomas could not perform work 'requiring a production rate or demand pace,' she did not give us enough information to understand what those terms mean. That makes it difficult, if not impossible, for us to assess whether their inclusion in Thomas's RFC is supported by substantial evidence."). However, pace-related restrictions that are explained are sufficient in this regard. See Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (finding that Plaintiff's restriction to "non-production jobs" had been adequately described because the ALJ explained that the claimant could perform work only in a "low stress" setting, without any "fast-paced work" or "public contact.").

Here, the ALJ added descriptors and clarifications (e.g., the use of the term "assembly line work" to help explain the meaning of "production rate pace;" that "simple, work related decisions" is designed to provide some limitation "regarding judgment and workplace stress;" and that "normal breaks" are "every two hours"), and appropriately relied on the opinions of Dr.

12

Brown and the state agency consultants with respect to Plaintiff's functional limitations. These explanations are sufficient to help the undersigned evaluate the ALJ's intent behind Plaintiff's RFC. See Richardson v. Berryhill, No. 5:17-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. Mar. 26, 2019) (finding that the ALJ's RFC limitation to a "nonproduction pace" passes Thomas muster because the ALJ explained how he reached his conclusion regarding the plaintiff's RFC.); see also Cannon v. Berryhill, No. 1:18 CV 285, 2019 WL 7875158, at *6 (W.D.N.C. Dec. 23, 2019), report and recommendation adopted sub nom. Cannon v. Saul, No. 1:18-CV-285-MOC-WCM, 2020 WL 596944 (W.D.N.C. Feb. 6, 2020) (finding that the ALJ's restriction to "nonproductive pace" did not pass Thomas muster because the restriction was unsubstantiated and undefined).

In sum, the ALJ's analysis and explanation of the RFC is not "sorely lacking" in a manner that "frustrates meaningful review," White v. Colvin, No. 3:15-CV-00197-FDW, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016), and the RFC is supported by substantial evidence in the record.

### C. The VE's Testimony

The DOT and its companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of

13

those occupations." Pearson v. Colvin, 810 F.3d 204, 205, n. 1 (4th Cir. 2015). "[A]n ALJ must ensure that any 'apparent' conflicts between [these sources] and the VE's testimony are reasonably resolved." Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019).

Here, the VE identified the representative occupations of laundry worker, housekeeping/cleaner, and hand packager. AR p. 48. Plaintiff contends that apparent conflicts exist between the VE's testimony and the DOT's description of these occupations.

### 1. "Off Task" Limitation

Plaintiff seems to take issue with the ALJ's discussion regarding "off task" behavior. See Doc. 14, pp. 19-20. As discussed above, Plaintiff's RFC states that her time off task can be accommodated by "normal breaks." AR p. 20; p. 24 (relying on state agency consultant's opinions, AR pp. 59-69 & 80-90). The VE's opinion that the representative occupations would accommodate normal breaks was based on his training, education and experience. AR p. 49.

Plaintiff correctly points out that the VE also testified that the identified occupations would be unavailable to an individual who was off task 15% of the time. See Doc. 14, p. 19 (citing AR p. 48). However, this statement is only relevant if this particular limitation was included in the Plaintiff's RFC. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) ("[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration

14

of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [Plaintiff's] impairments.") (citation omitted); Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (per curiam) ("[A] hypothetical question is unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence.") (internal quotation marks omitted) (emphasis omitted) (quoting Johnson, 434 F.3d at 659); Pauley v. Berryhill, No. 3:17-cv-2411, 2018 WL 4402026, at * 10 (S.D.W.Va. Aug. 27, 2018) ("an ALJ may reject hypothetical questions posed by a claimant's attorney that are more restrictive than the ALJ's own hypothetical question."). Here, it was not; Plaintiff's RFC does not include a 15% off task limitation and the ALJ found that Plaintiff's off task behavior could be accommodated by normal breaks.

To the extent Plaintiff is arguing that an apparent conflict exists because the DOT does not address the issue of "off task" behavior, the VE appropriately explained that his testimony regarding the tolerance for off task behavior was based on his training, education, and experience. See 20 C.F.R. § 404.1560(b)(2) (the Commissioner "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional

15

capacity."); Mullen v. Saul, No. 2:18-cv-44, 2019 WL 3995982, at * 3 (E.D.N.C. July 22, 2019) ("If the VE testifies to information not listed in the DOT, the ALJ may explain that the information is "available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.") (quoting SSR 00-4p, 2000 WL 1898704); DiBona v. Berryhill, No. 5:17-cv-206, 2018 WL 493582, at * 8 (E.D.N.C. July 3, 2018) (VE's testimony regarding off task behavior adequately supported by VE's "experience and industry studies").

## 2. Vocational Preparation, Reading, and Reasoning Levels

Additionally, Plaintiff argues that all three representative occupations require a specific vocational preparation (SVP) level of two, that the jobs of laundry worker and hand packager require reading and reasoning levels of two, and that these DOT requirements conflict with her mental capabilities.

A job with a SVP level of two requires a period of vocational training that is more than a short demonstration but not longer than one month. DICOT 323.687-014, 1991 WL 672783 ("Anything beyond short demonstration up to and including one month"). Plaintiff is correct that the occupations of laundry worker, housekeeping/cleaner, and hand packager each require a SVP level of two. However, the undersigned disagrees that a SVP level of two conflicts with Plaintiff's RFC, which limits her work to "simple, routine and repetitive tasks" and "simple work related decisions." See Welch v. Astrue, No. 3:11-CV-319,

16

2012 WL 2681833, at *4 (W.D.N.C. July 6, 2012) (finding no conflict exists between RFC limiting claimant to "simple routine work" and SVP level of two).

Plaintiff further argues that two of the three representative jobs require a General Educational Development (GED) reasoning and reading level of two, which conflict with her mental limitations. Recent authority from the Fourth Circuit has addressed this potential conflict. See Lawrence v. Saul, 941 F.3d 140, (4th Cir. 2019) (finding no apparent conflict between a reasoning level of two and RFC limiting claimant to "simple, routine, repetitive tasks."); King v. Saul, 787 Fed. Appx. 170 (2019), 2019 WL 6713598, at * 1 (4th Cir. 2019) (unpubl.) ("We find that *Lawrence* is controlling in this case and, thus, there was no apparent conflict between a limitation to performing only simple routine repetitive tasks and a position requiring the ability to understand and carry out detailed, but uninvolved, instructions.").

Further, the occupation of housekeeping/cleaner requires a GED reasoning and reading level of one, the lowest of reasoning and reading skills required by the DOT. DICOT 323.687-014 (G.P.O.), 1991 WL 672783. Plaintiff does not argue that a conflict exists with regard to this job. Accordingly, even if a conflict exists between Plaintiff's RFC and a GED reasoning and reading level of two, the ALJ's failure to resolve this conflict is harmless error; as Plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled

17

Case 3:19-cv-00404-WCM   Document 18   Filed 07/29/20   Page 17 of 18

under the Act."[5] <u>Richardson v. Berryhill</u>, No. 5:17-CV-00173-RJC-DSC, 2019 WL 1354042, at *4 (W.D.N.C. Mar. 26, 2019) (citing <u>Guiton v. Colvin</u>, 546 F. App'x 137, 142 (4th Cir. 2013); <u>see also</u> <u>Bavaro v. Astrue</u>, 413 F. App'x 382, 384 (2d Cir. 2011) (finding that the Commissioner need show only one job to meet her burden at Step Five).

## VI. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED** and the Commissioner's Motion for Summary Judgment (Doc. 16) is **GRANTED**.

Signed: July 28, 2020

W. Carleton Metcalf
United States Magistrate Judge

---

[5] The VE testified that there are 220,000 housekeeping/cleaner positions in the national economy.